IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN ELLING,

        Plaintiff,

v.                                Case No. 1:20-cv-00306-JHR-JFR

MESA BIOTECH, INC., MESA
TECH INTERNATIONAL, INC.,
HONG CAI, and ROBERT BRUCE
CARY, a/k/a R. BRUCE CARY, a/k/a
ROBERT CARY,

        Defendants.

## DEFENDANTS' MOTION TO STAY

Defendants Mesa Biotech, Inc. ("Mesa Biotech"), Mesa Tech International, Inc. ("MTI"), Hong Cai, and Robert Bruce Cary (collectively "Defendants"), move this Court for an order staying all proceedings in this case until this Court's ruling in *Elling v. Mesa Biotech, Inc.*, *et al.*, Case No. 1:19-cv-00547-LF-SCY ("*Elling I*"). That case involves the same parties and much of the same alleged conduct as the present case. The only remaining tasks in *Elling* I are for the Court to dispose of Plaintiff's claims on Defendants' fully-briefed summary judgment motion or to proceed to a bench trial with few witnesses and no expert testimony. Given the litigation history and respective procedural posture of the two cases, plus the relatively modest amount of time until a final disposition is reached in *Elling I*, both judicial economy and the competing interests of the parties weigh in favor of granting a stay.

Defendants respectfully request that this Court stay the present action and permit the *Elling I* Court to decide that case on the merits. In the alternative, Defendants ask that the Court stay this case at least until the Court in *Elling I* enters a ruling on the motion to dismiss that case

or consolidate the two cases, which Plaintiff – not Defendants – submitted. That motion also is ripe for decision.

Pursuant to D.N.M.LR-Civ. 7.1(a), Defendants' counsel conferred in good faith with Plaintiff's counsel on May 12, 2020 and determined that Plaintiff opposes this motion.

## I.    **Background and History**

Mesa Biotech (formerly MTI) designs, develops, manufactures and commercializes next generation molecular diagnostic immunoassay tests for various infectious diseases, including influenza A and B, RSV, and COVID-19. Plaintiff John Elling was a founder, officer, director, and initial shareholder of MTI along with Defendants Cai and Cary. *See Elling I* Compl., attached as Exhibit A ¶¶ 2-4. Nearly a decade ago, Plaintiff resigned as an officer and director of MTI and sold a majority of his shares to the company. *Id.* ¶ 13; *see also* Agreement for Termination of Employment by Mutual Consent and Stock Redemption, attached to Ex. A §§ 1-2. Defendants Cai and Cary remained with the corporation. Ex. A ¶¶ 6-8.

For approximately the past year, Plaintiff has litigated a panoply of complaints against Defendants, all of which target Defendants Cai and Cary's corporate governance of Mesa Biotech. In *Elling I* – which Plaintiff filed in May 2019 – Plaintiff claimed that after his resignation from MTI, he failed to receive proper shareholder notice of: (i) any amendment to MTI's articles of incorporation or bylaws, (ii) MTI's proposed merger with Mesa Biotech, or (iii) Mesa Biotech's relocation of its principal place of business to California. Ex. A ¶¶ 21-26. As such, Plaintiff alleged he was denied the opportunity to vote on any merger plan, dissent from the merger, or have his concerns addressed surrounding the amendments to the articles of incorporation or bylaws. *Id.* ¶¶ 27-30. Plaintiff also claimed that Defendants refused to allow him to inspect the books and records of MTI and Mesa Biotech in violation of New Mexico statutory

authority and common law. *Id.* ¶ 31. Plaintiff asserted three causes of action: breach of fiduciary duty, shareholder oppression, and breach of contract/breach of the covenant of good faith and fair dealing. *See generally id.* He sought all damages available under common law and statute, as well as punitive damages and attorneys' fees. *Id.* at 6, Prayer for Relief. Defendants have uniformly denied these claims and the factual allegations underlying them.

Plaintiff's deadline to amend the pleadings expired on September 3, 2019. *See Elling I* Order Setting Case Management Deadlines and Discovery Parameters ("*Elling I* Scheduling Order") attached as Exhibit B, at 2. Less than a month later, and still early in that litigation, Plaintiff claims Mesa Biotech provided him a copy of a capitalization table, from which he alleges he learned of several so-called "interested transactions" between Mesa Biotech, Hong Cai, and Bruce Cary. *See* Pl.'s *Elling I* Am. Mot. for Voluntary Dismissal by Order of Court, or Alternatively, to Consolidate, attached as Exhibit C, at 2. Plaintiff asserts that information forms the basis of this new action against Defendants. *Id.* at 3.[1] Those so-called "interested" transactions, as articulated in the Amended Complaint in this case, are Mesa Biotech's grants of stock options to its co-founders, Cai (also the longstanding CEO, now the CTO), and Cary (also the CSO). (Am. Compl. for Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty & Shareholder Oppression ("Am. Compl.") [Doc. 3] (filed 4/7/2020) ¶¶ 28-37, 41-52.)

---

[1]   In contrast, Defendants contend that Plaintiff manufactured the causes of action in this case not only from the information in the capitalization table Mesa Biotech provided to him, but also from a variety of documents that Mesa Biotech designated as "Confidential" and produced subject to the protections of the Confidentiality Order entered in *Elling I*. The capitalization table to which Plaintiff refers does not contain the majority of the information in the Amended Complaint filed in the present action, and the Amended Complaint specifically references several documents that were produced subject to the terms of the Confidentiality Order in *Elling I*. Defendants contend that, by filing of this lawsuit, Plaintiff has violated the terms of the *Elling I* Confidentiality Order, the enforcement of which is subject to the continuing jurisdiction of the *Elling I* Court. That dispute, which the *Elling I* Court is tasked with adjudicating, is yet another reason this Court should stay the present case.

Plaintiff supposedly obtained this information nearly eight months ago. Had Plaintiff sought to amend his complaint in *Elling I* to include claims based on the capitalization table within a reasonable timeframe, Defendants would have been hard pressed to oppose a requested amendment. But that is not how Plaintiff chose to proceed. Instead, Plaintiff chose to do nothing for more than six months. Plaintiff provided no explanation whatsoever for the delay in acting on his new claims, nor has he disclosed why he recently chose to pursue his claims in a separate lawsuit against the same parties while his first lawsuit is still pending and is on the eve of being finally decided.

During the time Plaintiff chose not to assert his new claims, he also did virtually nothing to prosecute the claims he alleged in *Elling I*. The only things Plaintiff did were: (1) contest removal to this court; (2) strenuously litigate the entry of a confidentiality order, on terms Defendants proposed and the Court accepted, to govern the production of Mesa Biotech's corporate documents; and (3) serve one set of written discovery requests on Defendants. Before the termination of discovery in February, Plaintiff did not take a single deposition. In addition, although the Court agreed to extend the deadlines for the parties' expert witness disclosures, *see Elling I* Order Granting Extension of Expert Witness Deadlines, attached as Exhibit D, Plaintiff did not identify any expert witness. Plaintiff also did not contest Mesa Biotech's "Confidential" designation on any of the documents it produced, file any motions related to discovery, or file any dispositive motions before the deadline set by the *Elling I* Court. In contrast, Defendants timely filed a summary judgment motion in *Elling I* which is fully briefed and submitted to the *Elling I* Court. *See Elling I* Notice of Completion of Briefing (filed Apr. 8, 2020), attached as Exhibit E. Under the *Elling I* Scheduling Order, the parties' pretrial order in that case is set to be submitted to the Court in mid-June. *See generally* Exhibit B.

Two days after the parties completed briefing on Defendants' summary judgment motion in *Elling I*, Plaintiff filed this new lawsuit. (*See generally* Am. Compl.) No less than one third of Plaintiff's allegations in this lawsuit substantially duplicate allegations from his first lawsuit. *Compare* (Am. Compl. ¶¶ 1-6, 9, 12, 18, 20-21, 23-24, 38-40, 53-54, 60, 72-74) *with* Ex. A ¶¶ 1-6, 9-10, 13-14, 20, 24-25, 35-36, 39-41. Specifically, Plaintiff sets the same factual backdrop in this lawsuit as his first, continues to complain about the merger and level of information he has received from the company since his resignation, and sets forth an identical shareholder oppression claim. *Compare* (Am. Compl. ¶¶ 1-6, 12, 20-21, 23-24, 38-40, 72-74) *with* Ex. A ¶¶ 1-6, 9-10, 13, 20, 39-41.

Soon after commencing this second round of litigation, Plaintiff filed a motion to dismiss his first case or consolidate it with his new lawsuit. *See* Ex. C. In short, having done nothing to pursue his first lawsuit, Plaintiff now simply wants to walk away from that failed endeavor, avoid a ruling on the merits of that lawsuit, pursue this new lawsuit, and ignore any limitations – preclusive, related to confidentiality, or otherwise – that may have been imposed upon him by what has happened in the case he already has pursued against Defendants for a full year.

## II.    Legal Standard

Courts have broad discretion in managing their dockets, including decisions regarding issuing stays for all or part of a proceeding. *See Clinton v. Jones*, 520 U.S. 681, 706, (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for

the exercise of judgment, which must weigh competing interests and maintain an even balance.

*Landis*, 299 U.S. at 254-55. Whether to issue a stay "depends greatly on the facts and progress in each case." *Benavidez v. Sandia Nat'l Labs.*, No. CIV 15-0922 JB/LF, 2016 U.S. Dist. LEXIS 149513, at *17-20 (D.N.M. Sep. 27, 2016).

"In deciding whether to enter a stay under the Court's inherent power to control its docket, the Court considers two factors: (1) the parties' competing interests; and (2) judicial economy." *Capitol Specialty Ins. Corp. v. Sw. Clubs, Inc*., No. 12-01299, 2015 U.S. Dist. LEXIS 179972, at *7 (D.N.M. Mar. 31, 2015). When judicial economy "is the factor that sets the context for the Court's analysis of the parties' competing interests and any resulting hardship" to the party opposing the stay, it is appropriate to consider that factor first. *Id.*

## III.    A Stay Is Appropriate Under the Circumstances

### A.    Judicial Economy Favors Granting A Stay.

The factor of judicial economy is "measured in terms of simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *see also Landis*, 299 U.S. at 256 (same). "This can occur, for example, when the related proceeding will help develop comprehensive evidence that bears on the questions at issue[, . . . ] even when the federal court is not bound by the findings and conclusions drawn from the related proceeding, so long as the related proceeding provides valuable assistance to the federal lawsuit." *Integon Preferred Ins. Co. v. Camacho*, No. 1:16-cv-01496, 2018 U.S. Dist. LEXIS 213066, at *34 (E.D. Cal. Dec. 18, 2018). Judicial economy also is served when there is a possibility of "narrowing the claims at issue" in the second-filed lawsuit. *Capitol Specialty Ins. Corp.*, 2015 U.S. Dist. LEXIS 179972, at *7-11.

Here, staying this case pending a final resolution in *Elling I* will promote judicial economy both by simplifying the applicable evidentiary issues and narrowing the issues at play in this lawsuit. As stated above, a significant portion of Plaintiff's allegations in this lawsuit substantially duplicate allegations from his first lawsuit. Both lawsuits share the same factual backdrop and the same shareholder oppression claim, and both lawsuits involve allegations about the merger and level of information Plaintiff received from the company since his resignation. *Compare* (Am. Compl. ¶¶ 1-6, 12, 20-21, 23-24, 38-40, 72-74) *with* Ex. A ¶¶ 1-6, 9-10, 13, 20, 39-41. As in *Capitol Specialty Ins. Corp.*, "staying this action the focus of the underlying case demonstrates that staying this action will prevent the parties and the Court from unnecessarily expending time, money, and judicial resources litigating . . . issues that may be moot." 2015 U.S. Dist. LEXIS 179972, at *11. The factor of judicial economy weighs in favor of granting a stay.

**B.     The Competing Interests of the Parties Also Weighs in Favor of Staying the Case.**

The parties' competing interests also favor staying this case. Defendants' interest in staying this litigation is the conservation of resources and the avoidance of litigating issues that potentially may be moot depending on the *Elling I* Court's ruling on the pending summary judgment ruling or its decision at trial. The interest of conserving resources extends not only to Defendants but also to Plaintiff and to this Court. Against this interest, the Court must weigh any competing interest of Plaintiff and any hardship to the Plaintiff. *Landis*, 299 U.S. at 254-55.

A delay in the plaintiff's eventual recovery of monetary damages is insufficient hardship to avoid a stay. *CMAX, Inc. v. Hall*, 300 F.2d 265, 269 (9th Cir. 1962). Similarly, it is not enough for Plaintiff to claim he "will be prejudiced by the delay in the sense that evidence will be obtained, or rulings made, as a result of the [outcome of the first-filed action], which will

adversely affect the claims which [he now] asserts in the district court." *Id.* To the contrary, it is well-established that

> this is not the kind of prejudice which should move a court to deny a requested postponement. If [Plaintiff] is prejudiced by such an eventuality it will be because the [first-filed action] demonstrate[s] a weakness in [his] case. And if [his] case is weak, justice will be served by having that fact revealed prior to the district court trial.

*Id.* These are the only conceivable hardships that Plaintiff potentially can claim he will suffer if this case is stayed pending resolution of the claims asserted in *Elling I*. However, such hardships are not sufficient to outweigh the interest of all the parties in avoiding litigation of potentially moot issues. *Capitol Specialty Ins. Corp.*, 2015 U.S. Dist. LEXIS 179972, at *7-11. This is particularly true when all parties, as well as the Court, have a weighty countervailing interest in staying the case to conserve resources and avoid unnecessary expense.

Further, in light of the procedural posture in *Elling I*, any perceived inconvenience to Plaintiff arising out of a stay will be short lived. Defendants' fully-briefed summary judgment motion was submitted to the *Elling I* Court a month and a half ago. The pretrial order is due in approximately one month, and in all likelihood the bench trial soon will follow if the Court does not grant Defendants' dispositive motion. Because the duration of the stay is likely to be relatively short-lived, this factor weighs in favor of prioritizing the parties' interest in conserving resources over Plaintiff's interest in speeding along with this second lawsuit. This is particularly true here, where Plaintiff has shown no urgency whatsoever in prosecuting these new claims, in spite of having learned about them last September. *See Leyva v. Certified Grocers of Cal., Ltd*., 593 F.2d 857, 864 (9th Cir. 1979) ("A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court.")

**IV.    In the Alternative, the Court Should Stay Proceedings Until A Ruling by the Court in *Elling I* on Plaintiff's Motion to Dismiss or Consolidate.**

In the alternative, the Court should stay this case at least until the Court in *Elling I* enters a ruling on the motion to dismiss that case or consolidate the two cases, which Plaintiff recently submitted. That motion also is ripe for decision. In light of the insignificant delay a decision on that motion may cause in this lawsuit, it makes no sense for this Court to proceed in a case it may not end up adjudicating. That is particularly true when Plaintiff requested consolidation in the first place.

**V.    Conclusion**

Plaintiff has filed two separate lawsuits arising from the same set of facts and asserting many of the same causes of action. The first lawsuit soon will be resolved. Defendants respectfully request that this Court enter an order staying this case pending the final resolution of *Elling I*. In the alternative, Defendants request the Court enter an order staying this case at least until the *Elling I* Court enters its ruling on Plaintiff's motion to dismiss that case or consolidate the two similar actions Plaintiff filed against Defendants.

Respectfully submitted,

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By */s/ Melanie B. Stambaugh*
   Andrew G. Schultz
   Melanie B. Stambaugh
Post Office Box 1888
Albuquerque, New Mexico 87103
Telephone: (505) 765-5900
Facsimile: (505) 768-7395
aschultz@rodey.com
mstambaugh@rodey.com
*Attorneys for Defendants*