IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN ELLING,

    Plaintiff,

v.                                                         Case No. 1:20-cv-00306-JHR-JFR

MESA BIOTECH, INC., MESA TECH
INTERNATIONAL, INC., HONG CAI,
and ROBERT BRUCE CARY, a/k/a
R. BRUCE CARY, a/k/a ROBERT CARY,

    Defendants.

## DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Pursuant to Fed. R. Civ. P. 12(c), Defendants Mesa Biotech, Inc. ("Mesa Biotech"), Mesa Tech International, Inc. ("MTI"), Hong Cai, and Robert Bruce Cary (collectively "Defendants"), move this Court for a judgment on the pleadings. The preclusive effect of the Court's grant of summary judgment in favor of Defendants and corresponding final judgment in *Elling v. Mesa Biotech, Inc., et al.*, Case No. 1:19-cv-00547-LF-SCY ("*Elling I*") bars relitigation of Plaintiff's breach of fiduciary duty, shareholder oppression, and aiding and abetting claims in the present case ("*Elling II*"). The Court should dismiss those claims with prejudice.

Pursuant to D.N.M.LR-Civ. 7.1(a), Defendants' counsel concurred in good faith with Plaintiff's counsel about filing this motion during the June 25, 2020 status conference of this matter and determined that Plaintiff opposes this motion.

**I.**      **Background and History**

Mesa Biotech (formerly MTI) designs, develops, manufactures and commercializes next generation molecular diagnostic immunoassay tests for various infectious diseases, including

influenza A and B, RSV, and COVID-19.  Plaintiff John Elling was a founder, officer, director, and initial shareholder of MTI along with Defendants Cai and Cary. (*See Elling I* Compl., attached to Mot. to Stay [Doc. 13] as Exhibit A ¶¶ 2-4.)[1]  Nearly a decade ago, Plaintiff resigned as an officer and director of MTI and sold a majority of his shares back to the company. (*Id.* ¶ 13; *see also* Agreement for Termination of Employment by Mutual Consent and Stock Redemption, attached to Ex. A of Mot. to Stay as Ex. A §§ 1-2.) Defendants Cai and Cary remained with the corporation. (Mot. to Stay, Ex. A ¶¶ 6-8.)

For more than the past year, first in *Elling I* and now here, Plaintiff has litigated a panoply of complaints against Defendants, all of which target Defendants Cai and Cary's corporate governance of MTI and Mesa Biotech. To distinguish between the two lawsuits, Plaintiff now attempts to categorize *Elling I* as a "books and records case," and this case as a "substantive" lawsuit pertaining to MTI/Mesa Biotech's grants of stock options to Drs. Cai and Cary in 2014 and 2018, which he claims were "interested transactions" that diluted his stock value as a minority shareholder.  Such a categorization is no more than an exercise in revisionist history and does not change the fact that Plaintiff raised the same issues and the same claims in both lawsuits.

---

[1]  This Motion will refer to various filings and orders from *Elling I*, which are matters of public record of which this Court may take judicial notice.  *Cf. Hodgson v. Farmington City*, 675 Fed App'x 838, 840-41 (10th Cir. 2017) (it is proper to take judicial notice of public records); *United States v. Fink*, 393 F. Supp. 2d 935, 939 (D.S.D. 2005) ("[S]ince district courts may take judicial notice of public records, they may properly consider public records on a motion to dismiss.") (*citing Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003)).  *See also Tex. Border Coal. v. Napolitano*, 614 F. Supp. 2d 54, 57 n.1 (D.D.C. 2009) (court was not obligated to convert a motion to dismiss into one for summary judgment pursuant to Fed. R. Civ. P. 12(d) because the exhibits to the motion consisted entirely of court orders and excerpts from congressional acts about which the Court can take judicial notice under Fed. R. Evid. 201(b)-(c).); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773-75 (2d Cir. 1991) (court may consider matters about which judicial notice may be taken without converting a motion to dismiss into a motion for summary judgment); *Nix v. Fulton Lodge No. 2*, 452 F.2d 794, 797-98 (5th Cir. 1971) (motion to dismiss is not converted into a motion for summary judgment when copies of court opinions are submitted for the Court's consideration).

A.     *Elling I*

Plaintiff filed *Elling I* in May 2019. In that lawsuit, he alleged that over the years since he resigned, he received scant information regarding MTI's operations. (Mot. to Stay, Ex. A ¶ 22.) He claimed he first learned that MTI merged with Mesa Biotech in August 2018, received no contemporaneous notice of any proposed merger or proposed amendment to MTI's articles of incorporation, did not receive the opportunity to vote on the proposed merger, and that no merger plan was submitted to MTI's shareholders. (*Id.* ¶¶ 23, 24.) Plaintiff also alleged that MTI/Mesa Biotech refused to allow him to inspect its books and records and refused to address his concerns regarding the merger, "amendments to [its] articles of incorporation or bylaws, relocation [to California, and] changes to its stock plan." (*Id.* ¶ 30.)

The *Elling I* Complaint states that "[o]n August 22, 2018, Mesa Biotech Inc. wrote Elling a letter that it had twice amended its certificate of incorporation to increase its total number of shares, amended its bylaws, adopted a new equity incentive plan, increased its number of directors, and entered into unspecified indemnification agreements with all of its directors." (*Id.* ¶ 23.) Plaintiff further claimed that on October 8, 2018 and January 10, 2019, he wrote to Mesa Biotech "to address his concerns with the purported merger, amendments to the company's articles of incorporation and bylaws, relocation, and changes to its stock plan." (*Id.* ¶ 29.) Thus, the face of the complaint in *Elling I* makes clear that Plaintiff was on notice of the changes in Mesa Biotech's stock plan, including the possible grant of stock options to Drs. Cai and Cary in 2014 and 2018, before he filed *Elling I*. Moreover, Plaintiff pointed out concerns related to the value of his stock in the company in the complaint in *Elling I*, an issue which encompasses the stock dilution damages he now purports to have incurred. Defendants consistently and vigorously have denied these factual claims.

Plaintiff asserted three causes of action in *Elling I*. Count I alleged that Drs. Cai and Cary breached their fiduciary duties to Plaintiff by failing to disclose to Plaintiff their intent to merge or allow him to vote on the merger, as well as by failing to inform him or hold a vote on the changes to the company's certificate of incorporation, bylaws, stock plan, or its move to California." (*Id.* ¶ 37.) Count II generically alleged that Defendants engaged in "shareholder oppression." (*Id.* ¶¶ 39-41.) Count III alleged that MTI breached its contract with Plaintiff, including breaching the covenant of good faith and fair dealing, because it "wrongfully withheld the value promised to Elling by virtue of its merger, issuance of additional stock, and changing stock plans." (*Id.* ¶ 44 (emphasis added).) In *Elling I*, Plaintiff sought compensatory, statutory, and punitive damages, as well as his attorney's fees and costs. (*Id.* at 6, Prayer for Relief.)

Plaintiff's deadline to amend the pleadings expired on September 3, 2019. (*See Elling I* Order Setting Case Management Deadlines and Discovery Parameters ("*Elling I* Scheduling Order") attached as Exhibit B to Mot. to Stay, at 2.) Less than one month later, and still early in that litigation, Plaintiff claims Mesa Biotech provided him with a copy of a capitalization table, from which he alleges he learned of several so-called "interested transactions" between Mesa Biotech and Drs. Cai and Cary. (*See* Pl.'s *Elling I* Am. Mot. for Voluntary Dismissal by Order of Court, or Alternatively, to Consolidate, attached as Exhibit C to Mot. to Stay, at 2.) Plaintiff asserts that information forms the basis of this lawsuit. (*Id.* at 3.)[2] Those so-called "interested" transactions, as articulated in the Amended Complaint, are Mesa Biotech's grants of stock options in 2014 and 2018 to its co-founders, Cai (also the longstanding CEO, now the CTO), and

---

[2] In contrast, Defendants contend that Plaintiff manufactured the causes of action in this case not only from the information in the capitalization table Mesa Biotech provided to him, but also from a variety of documents that Mesa Biotech designated as "Confidential" and produced in December 2019, subject to the protections of the Confidentiality Order entered in *Elling I*. Either way, it is clear that Plaintiff had access to the documents that form the basis for this lawsuit well before discovery ended in *Elling I* on February 7, 2020.

Cary (also the CSO). (Am. Compl. for Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty & Shareholder Oppression ("Am. Compl.") [Doc. 3] (filed 4/7/2020) ¶¶ 28-37, 41-52.)

Plaintiff received the capitalization table when discovery in *Elling I* was barely underway. (Mot. to Stay at 3.) Based on the timing with which Plaintiff made this so-called discovery and the fact that Plaintiff already raised stock-related concerns in May 2019 when he filed his *Elling I* complaint, Plaintiff was free to pursue his stock-related claims in a timely manner in *Elling I*. He failed to do so. Instead, he fought the removal of *Elling I* to this Court, fought strenuously over the terms of the confidentiality order to be entered in that case, and did very little else. Then, two days after Defendants submitted a fully-briefed motion for summary judgment on all claims in *Elling I*, he decided to abandon his first lawsuit, file this lawsuit instead, and act as if the entire last year of litigation history had not occurred.

The Court in *Elling I* did not countenance Plaintiff's strategy. In denying Plaintiff's motion to voluntarily dismiss or consolidate, the Court noted:

> granting Mr. Elling's motion would deprive Defendants of any preclusive effect a ruling on the motion for summary judgment might have. It also would deprive Defendants of all the time and effort they put into defending this case and give Mr. Elling a clean slate on which to litigate his newly filed case, in spite of the overlap between the two cases. Although Mr. Elling characterizes this case as just a "books and records case" and merger case, . . . he seems to forget that he also alleged claims for breach of fiduciary duty and shareholder oppression – just as he does in his newly filed case . . . Mr. Elling, however, made no effort to seek to amend his claims in this case after receiving access to the books and records in December 2019 that presumably provided the information necessary for him to allege the claims he makes in his later filed case.

Mem. Op. and Order Denying Pl.'s Amended Mot. for Voluntary Dismissal by Order of Court, or, Alternatively, to Consolidate in *Elling I*, attached as Exhibit A, at 6-7.

The same day the *Elling I* Court denied Plaintiff's motion to dismiss or consolidate, it granted Defendants' motion for summary judgment in its entirety and entered a final judgment in

favor of Defendants. In its Memorandum Opinion and Order, the Court made several observations salient to this Court's analysis now.

First, the Court acknowledges that Plaintiff had a full chance to litigate all of his claims in *Elling I* but chose not to do so:

> In response [to Defendant's motion for summary judgment], Mr. Elling does not specifically address the three claims he brings in his complaint: breach of fiduciary duty, shareholder oppression, and breach of contract. *See generally* Doc. 49 at 7–10. Instead, he argues that he has brought "a claim for failure to hold a vote on the merger that saw MTI merge into Mesa Biotech," *id.* at 7. . .

Mem. Op. and Order Granting Defts. Mot. for Summ. J. in *Elling I*, attached as Exhibit B, at 5. Notwithstanding Plaintiff's narrow focus in responding to the summary judgment motion, the Court pointed out that Plaintiff's complaint in *Elling I* contained much broader allegations, including allegations related specifically to changes in the company's stock plan. *Id.* at 4. The Court therefore noted the fact that while Plaintiff had the opportunity comprehensively to address each of the three claims pled in his complaint, he freely opted to focus instead only on discrete parts of those claims. Further, with regard to the value of Plaintiff's stock, the Court observed that Plaintiff "still owns 395,200 shares of Mesa Biotech common stock[, and that] . . . Mr. Elling's shares are worth the same as every other share of Mesa Biotech common stock, including those held by Ms. Cai and Mr. Cary." *Id.* at 3.

With regard to the breach of fiduciary duty claim, Defendants' summary judgment motion attacked Plaintiff's allegation that Defendants failed to inform him or hold a vote regarding "changes to the company's . . . stock plan." *Id.* at 9. As the Court recognized, that allegation was listed in the motion as one of the "meager allegations" that Defendants claimed was "not factually sustainable." *Id.* And, as the Court observed, Defendants argued generally in their motion for summary judgment that the claim "has no legal merit" because, in relevant part, Plaintiff "cannot show that Ms. Cai and Mr. Cary acted with any improper motive, or that they realized a benefit

that Mr. Elling did not receive." *Id.* at 4-5.  Further, the Court disposed of Plaintiff's breach of fiduciary duty claim based on Plaintiff's general failure to set forth any evidence on the damages he claimed to have suffered as a result of any breach. *Id.* at 10. The Court reasoned:

> Mr. Elling submits no evidence to rebut defendants' evidence that he has suffered no damage from the alleged breach of fiduciary duty. . . He acknowledges that he remains a minority shareholder in Mesa Biotech, and that he received the same proportion of shares that he held in MTI. *See* Doc. 1-1 ¶ 20 (Mr. Elling retained 3952 shares of MTI's common stock); Doc. 49 at 5 ¶¶ 3, 20 (Mr. Elling "acknowledges that he has 395,200 shares of [Mesa Biotech's] common stock" and noting there was a 100:1 stock split in 2012); *see also* Doc. 1-4 at 6 (Articles of Amendment showing 100:1 stock split). Mr. Elling acknowledged that the valuation of his shares in July 2018 was $1.8 per share, and he submitted evidence that the value of his stock may have increased substantially since that date. *See* Doc. 1-4 at 9 (Summary of Valuation as of 7/27/2018); Doc. 49 at 5 ¶ 22 (alleging value of $8.16 per share in September 2019) (citing Doc. 49-1 at 25). In short, there is no evidence to support the third element of Mr. Elling's claim of a breach of fiduciary duty.

*Id.* at 10. Thus, the Court disposed of that claim in its entirety.

With regard to the shareholder oppression claim, Defendants argued "that Mr. Elling cannot sustain his claim for shareholder oppression because Mr. Elling cannot prove that the merger <u>or any other acts by defendants diminished the value of Mr. Elling's shares in Mesa Biotech or otherwise harmed his minority interests</u>." *Id.* at 5 (emphasis added).  The Court observed that "Mr. Elling does not specifically state in his complaint or his response to defendants' motion [for summary judgment] what conduct he alleges was oppressive." *Id.* at 12. After finding no conduct whatsoever which would rise to a legally actionable level of oppression, the Court also noted that Plaintiff once again failed to establish any damages arising from his shareholder oppression claim. *Id.*  Thus, the Court also disposed of that claim in its entirety.

      B.    *Elling II*

In Mr. Elling's new complaint, he alleges more specific facts regarding MTI/Mesa Biotech's grant of stock options to Drs. Cai and Cary, by detailing a "2014 Interested

Transaction" before MTI's merger with Mesa Biotech and "2018 Interested Transactions" after the merger. (*See* Am. Compl. ¶¶ 28–37, 41–52.) Count I of the complaint alleges that Ms. Cai and Mr. Cary breached their fiduciary duties to Mr. Elling multiple times, and Count II alleges that they aided and abetted each other in breaching these duties. (*Id.* ¶¶ 53–71.) Count III alleges that all Defendants engaged in shareholder oppression. (*Id.* ¶¶ 72–74.) Mr. Elling seeks compensatory and punitive damages, pre- and post-judgment interest, attorney's fees and costs, and asks the Court to rescind the "options and cancel the shares Cai & Cary gave themselves at the expense of the Company." (*Id.* at 8, ¶¶ A–E.)

No less than one third of Plaintiff's allegations in this lawsuit substantially duplicate the allegations from his first lawsuit. (*Compare* Am. Compl. ¶¶ 1-6, 9, 12, 18, 20-21, 23-24, 38-40, 53-54, 60, 72-74 *with* Mot. to Stay, Ex. A ¶¶ 1-6, 9-10, 13-14, 20, 24-25, 35-36, 39-41.) Specifically, Plaintiff sets the same factual backdrop in this lawsuit as his first, continues to complain about the merger and level of information he has received from the company since his resignation, and sets forth an identical shareholder oppression claim. (*Compare* Am. Compl. ¶¶ 1-6, 12, 20-21, 23-24, 38-40, 72-74 *with* Mot. to Stay, Ex. A ¶¶ 1-6, 9-10, 13, 20, 39-41.)

## II.     Applicable Legal Standard

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A defendant "may move for judgment on the pleadings if no material facts are in dispute and the dispute can be resolved on both the pleadings and any facts of which the Court can take judicial notice." *Gallup Med Flight, LLC v. Builders Tr. of N.M.*, 240 F. Supp. 3d 1161, 1197 (D.N.M. 2017) (internal quotation marks and citations omitted). A motion for judgment on the pleadings is "generally treated in the same manner as a motion to dismiss under rule 12(b)(6)." *Id.* "A motion for a

judgment on the pleadings will be granted if the pleadings demonstrate that the moving party is entitled to judgment as a matter of law." *Id.*

### III.   Res Judicata/Claim Preclusion Bars Plaintiff's Claims for Breach of Fiduciary Duty and Shareholder Oppression

"Res judicata prevents a party or its privies from repeatedly suing another for the same cause of action." *Deflon v. Sawyers*, 2006-NMSC-025, ¶ 2, 137 P.3d at 579. Res judicata is a broad bar, precluding a party from bringing any claims which were, or which could have been raised in a prior proceeding finally determined on the merits. *See Kirby v. Guardian Life Ins.*, 2010-NMSC-014, ¶ 61, 231 P.3d 87. Under New Mexico law, res judicata, also known as claim preclusion, bars re-litigation of "the same claim between the same parties or their privies when the first litigation resulted in a final judgment on the merits." *Mayer v. Bernalillo Cty.*, No. CIV 18-0666 JB\SCY, 2019 U.S. Dist. LEXIS 3555, at *58 (D.N.M. Jan. 8, 2019).

New Mexico law sets forth four elements that a party seeking to assert res judicata must establish: "(i) the same parties or parties in privity; (ii) the identity of capacity or character of persons for or against whom the claim is made; (iii) the same subject matter; and (iv) the same cause of action in both suits." *Hartnett v. Papa John's Pizza USA, Inc.*, 828 F. Supp. 2d 1278, 1285-86 (D.N.M. 2011) (citing *Apodaca v. AAA Gas Co.*, 2003-NMCA-085, ¶ 75, 73 P.3d 215).

New Mexico courts look to three factors to determine whether the first and subsequent claims are "so interwoven as to constitute a single claim for purposes of res judicata . . . : (i) the relatedness of the facts in time, space, origin, or motivation; (ii) whether, taken together, the facts form a convenient unit for trial purposes; and (iii) whether the treatment of the facts as a single unit conforms to the parties' expectations or business understanding or usage." *Hartnett*, 828 F. Supp. 2d at 1285-86 (citations omitted). Additionally, res judicata bars a claim only where a

party had a "full and fair opportunity to litigate issues arising out of that claim." *Kirby*, 2010-NMSC-014, ¶ 61.

All of the elements of res judicata are met for both Plaintiff's claims for breach of fiduciary duty and shareholder oppression. The parties in both lawsuits are identical, Defendants are being sued in the same capacity here as in *Elling I*, and as in *Elling I*, Plaintiff has brought breach of fiduciary duty and shareholder oppression causes of action against Defendants here. The shareholder oppression claim in both lawsuits is identical. What Drs. Cai and Cary's fiduciary obligations to Plaintiff were, and whether they met them, are broad legal issues which were pled generally in *Elling I* and whose contours color both lawsuits equally, as the Court in *Elling I* recognized.

Although Plaintiff will argue that the subject matter of his present "substantive" lawsuit is sufficiently different than his earlier "books and records" case to give rise to separate claims, the extensive litigation history and the *Elling I* Court's findings undermine that argument. To the contrary, all the elements set forth in *Hartnett* exist here. First, the events underlying both lawsuits are related in time, space, origin, and motivation because they all span from 2010 to the present and address and originate from the corporate governance of MTI and Mesa Biotech under the leadership of Drs. Cai and Cary, their motivations in making the decisions they did, and whether they followed the proper corporate procedure in executing those decisions. Second, because of this identity of issues, they form a convenient unit for trial. Third, because Plaintiff asserted allegations related to the stock plan in *Elling I* and received the document he claims forms the basis for this lawsuit months ago while discovery was ongoing in *Elling I*, treatment of the facts as a single units conforms to the parties' expectations and traditional litigation practice that the evidence uncovered during discovery will be raised in that case and not a later, standalone lawsuit after the first case already has been adjudicated.

Finally, and most importantly, nothing prevented Plaintiff from litigating the claims he now makes here in *Elling I*. Plaintiff asserted the same causes of action, and thus had the means to pursue those claims to their fullest extent without the need to amend his pleadings. As the *Elling I* Court acknowledged, it was purely his option not to do so, and his previous litigation choices are now to his peril. Plaintiff had a full and fair opportunity to litigate all of his complaints regarding the corporate governance of MTI and Mesa Biotech and the companies' stock plans under the helm of Drs. Cai and Cary in his first lawsuit. The Court should not permit Plaintiff willingly to forego litigating those claims in *Elling I* simply because he now disavows the overlapping legal issues in the two lawsuits in a transparent attempt to dodge the preclusive effect of the Court's ruling in *Elling I*. The breach of fiduciary duty and shareholder oppression claims in *Elling I* were fully and finally adjudicated in that lawsuit, and they should remain extinguished here. *Pielhau v. State Farm Mut. Auto. Ins. Co.*, 2013-NMCA-112, ¶ 10, 314 P.3d 698 ("[A] dismissal with prejudice is an adjudication on the merits for purposes of res judicata.") Plaintiff cannot have a second bite at the apple.

**IV.     Collateral Estoppel/Issue Preclusion Bars Plaintiff's Aiding and Abetting Claim and Prevents Him from Seeking Rescission of Drs. Cai and Cary's Stock Options**

"Like res judicata, collateral estoppel promotes judicial economy and protects parties from endless relitigation." *Deflon*, 2006-NMSC-025, ¶ 13. "Under New Mexico law, collateral estoppel, also called issue preclusion, prevents a party from re-litigating ultimate facts or issues actually and necessarily decided in a prior suit." *Mayer*, at * 59 (quoting *Ullrich v. Blanchard*, 2007-NMCA-145, ¶ 19, 171 P.3d 774).

> The party seeking to preclude relitigation of an issue must demonstrate that:
>
> (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation.

*O'Brien v. Behles*, 2020-NMCA-032, ¶ 49, \_\_\_\_ P.3d \_\_\_. Additionally, "[t]o give rise to estoppel, the finding of ultimate facts in the prior action must have been final." *Silva v. State*, 1987-NMSC-107, ¶ 7, 745 P.2d 380 (citation omitted). *See also City of Santa Fe v. Velarde*, 1977-NMSC-040, ¶ 9, 564 P.2d 1326 (application of the doctrines of res judicata or collateral estoppel requires a prior final decision). If the party invoking the doctrine establishes a prima facie case, then the burden shifts to the party opposing collateral estoppel to show that he or she was not afforded a fair opportunity to litigate the issue in the prior proceeding. *See Padilla v. Intel Corp.*, 1998-NMCA-125, ¶ 4, 964 P.2d 862. *Accord Hartnett*, 828 F. Supp. 2d at 1286.

Whether the doctrine of collateral estoppel should be applied is within the trial court's discretion, and the exercise of discretion is reviewed for an abuse of discretion on appeal. *See Hartnett*, 828 F. Supp. 2d at 1286. Even when all the elements of collateral estoppel are present, it should be applied only where the judge determines that its application would not be fundamentally unfair. *See id.*; *Reeves v. Wimberly*, 1988-NMCA-038, ¶ 14, 755 P.2d 75.

The elements of collateral estoppel for Plaintiff's aiding and abetting claim set forth in *O'Brien* are met here. First, Plaintiff (the party to be estopped) also was the plaintiff in *Elling I*. Second, this cause of action is different than the causes of action in *Elling I*. Plaintiff did not bring an aiding and abetting claim in *Elling I*. Third, notwithstanding that fact, whether Drs. Cai and Cary assisted each other in breaching any fiduciary duties owed Plaintiff was actually litigated and necessarily determined in *Elling I*. As discussed above, Plaintiff's *Elling I* Complaint contains a breach of fiduciary duty claim, as well as factual allegations related to MTI's stock plan and Drs. Cai and Cary's corporate actions which he claims affected the value of his stock. It specifically references the 2018 Equity Incentive Plan by which Drs. Cai and Cary received the majority of the stock options about which Plaintiff now complains. Even Plaintiff concedes that both lawsuits

address the common legal issue of Defendant Cai and Cary's fiduciary obligations to Plaintiff as a minority shareholder and whether they breached those duties. (*See* Pl.'s *Elling I* Am. Mot. for Voluntary Dismissal by Order of Court, or Alternatively, to Consolidate, attached as Exhibit C to Mot. to Stay, at 3, ¶ 16.) And as a practical matter, where both defendants have been accused of the same underlying conduct, an aiding and abetting claim involving those same parties is merely an extension of the underlying conduct of which those parties were accused. For that reason, the New Mexico Court of Appeals has held that "[e]xtending aiding and abetting liability to a party already owing a fiduciary duty is inconsistent and duplicative of this principle because a fiduciary is already liable for the breach." *Rael v. Page*, 2009-NMCA-123, ¶ 28, 222 P.3d 678.[3] Thus, it does not appear that New Mexico courts even recognize such a claim, separate from the underlying breach of fiduciary duty claim.

Finally, as with his other claims, Plaintiff had a full and fair opportunity to develop in *Elling I* evidence concerning the ways in which he claims Drs. Cai and Cary assisted each other in breaching their fiduciary duties to Plaintiff or otherwise deprived him of his rights as a minority shareholder. He simply chose not to do so. Accordingly, even though Plaintiff did not bring a standalone aiding and abetting claim in *Elling I*, he should be precluded from doing so here. *Cf. Augustine v. Adams*, 88 F. Supp. 2d 1166, 1172 (D. Kan. 2000) (earlier ruling of summary judgment is an adjudication on the merits).

## V. Conclusion

Plaintiff filed this lawsuit, which arises from the same set of facts and asserts predominantly the same causes of action he already raised and litigated for the past year in

---

[3] The fact that New Mexico courts do not recognize an aiding and abetting claim under the circumstances at bar is an additional, independent reason why this claim should be dismissed as a matter of law. *See* Fed. R. Civ. P. 12(c).

*Elling I*. He did little to develop those claims. The first lawsuit was resolved in Defendants' favor based, in considerable part, on his failure to argue anything more than the most narrow issues. Plaintiff should not be granted a second chance to rebottle the same contents in a different container with this lawsuit.

For these reasons, Defendants respectfully request that this Court enter an order dismissing Plaintiff's breach of fiduciary duty, aiding and abetting, and shareholder oppression claims with prejudice.

Respectfully submitted,

RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.

By   */s/ Melanie B. Stambaugh*
    Andrew G. Schultz
    Melanie B. Stambaugh
Post Office Box 1888
Albuquerque, New Mexico  87103
Telephone: (505) 765-5900
Facsimile: (505) 768-7395
aschultz@rodey.com
mstambaugh@rodey.com

*Attorneys for Defendants Mesa Biotech, Inc., Mesa Tech International, Inc., Hong Cai, and Robert Bruce Cary*