**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JOHN ELLING,

    *Plaintiff*,

v.                                                    No. 1:20-cv-00306-JHR-JFR

HONG CAI, ROBERT BRUCE CARY, a/k/a R.
BRUCE CARY, a/k/a ROBERT CARY,
MESA BIOTECH, INC., and MESA TECH
INTERNATIONAL, INC.,

    *Defendants.*

**PLAINTIFF'S EMERGENCY PETITION FOR PRELIMINARY INJUNCTION &
REQUEST FOR ORAL ARGUMENT**

COMES NOW Plaintiff Dr. John Elling, by and through counsel, LAW OFFICE OF JAMISON BARKLEY, LLC (Jamison Barkley) and, pursuant to Fed. R. Civ. P. 65(a), petitions the Court for a preliminary injunction to prevent Defendant Mesa Biotech, Inc. from distributing the proceeds of any impending acquisition of Mesa Biotech prior to resolution of this lawsuit. Pursuant to D.N.M. LR-Civ 7.6, Plaintiff requests oral argument.  In support of his Motion, Plaintiff states as follows:

1. Plaintiff filed this case against Defendants to recover his losses when individual Defendants Cai & Cary diluted the value of his stock with self-dealing transactions in 2014 and 2018.  See John Elling's First Amended Complaint for Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty, and Shareholder Oppression,

filed Apr. 7, 2020 (Doc. 3); Schedule of Exceptions with Capitalization Table, **attached hereto as Ex. 1**.

2. This case is about Plaintiff's rightful percentage ownership of Defendant Mesa Biotech relative to that of Defendants Cai & Cary: prior to the 2014 and 2018 grants Cai & Cary gave themselves, there were 6,922,339 shares of common stock and options; after their self-dealing, the company had 11,474,069 shares and options. See Schedule of Exceptions with Capitalization Table, **attached hereto as Ex. 1.**

3. Cai and Cary's 2014 and 2018 transactions diluted the value of Plaintiff's stock by approximately 1/3. See id.

4. Because he is a minority shareholder and they were majority shareholders at the time of their self-dealing transactions, Cai & Cary breached their fiduciary duties to Plaintiff.

5. Defendants have a dispositive motion pending before the Court.

6. Defendants moved to dismiss Plaintiff's claims on the basis that he lost them when he did not make them in Elling I, the case Plaintiff filed to obtain shareholder records prior to accrual of his substantive claims.

7. It is undisputed Plaintiff was not aware of the 2014 and 2018 transactions, and that his claims thus did not accrue, when he filed Elling I in May 2019. See, e.g., Defendants' Motion for Judgment on the Pleadings 4 n.2 (arguing that Plaintiff "manufactured" the claims from documents that he received in discovery in December 2019).

8. Defendants have not made any substantive explanation of why they gave themselves an additional two grants of options after they were already in control of over 77% of the company and therefore incentivized to stay.

9. On January 19, 2021, Plaintiff received a press release via email that another company is acquiring Mesa Biotech for up to $550,000,000.  See Elling Dec. with attachments, **attached hereto as Exhibit 2**, ¶ 7.

10. The acquiring company made a public statement that there is a "definitive agreement" and the transaction will be completed in the first quarter 2021.  See id. ¶ 8.

11. Receipt of the press release was the first time Plaintiff learned about the impending acquisition.  See id. ¶ 9.

12. Plaintiff was not notified of a shareholder vote to approve of the acquisition or that the acquisition had actually been approved by the requisite number of shares.  See id. ¶ 9.

**Argument & Authorities**

To obtain a preliminary injunction, the moving party must establish that:

> (1) the moving party will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood that the moving party will eventually prevail on the merits.

Resolution Tr. Corp. v. Cruce, 972 F.2d 1195, 1198 (10th Cir. 1992).  "[T]he limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."  O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d

973, 976–77 (10th Cir. 2004), aff'd and remanded sub nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 126 S. Ct. 1211, 163 L. Ed. 2d 1017 (2006) (internal quotation marks omitted). "In issuing a preliminary injunction, a court is primarily attempting to preserve the power to render a meaningful decision on the merits." Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc., 805 F.2d 351, 355 (10th Cir. 1986).

### 1. Plaintiff will Suffer Irreparable Injury if the Proceeds are Distributed Prior to a Ruling on the Individual Parties' Equity Positions

"Harm is irreparable unless alternative legal redress [is] clearly available and [is] as practical and efficient to the ends of justice and its prompt administration as the remedy in equity." Applied Energetics, Inc. v. Farley, No. CV 2018-0489-TMR, 2019 WL 334426, at *11 (Del. Ch. Jan. 23, 2019).

If the sales proceeds for the acquisition of Mesa Biotech are distributed prior to a decision on the merits in this case, Plaintiff's right to receive value for the full amount of his shares in the acquisition will be lost. Plaintiff will receive a lesser portion than the rightful value of his shares from the acquisition and Defendants Cai & Cary will receive a greater portion than the value of their shares. Depending on the details of the acquisition, specifically whether the buyer will acquire Mesa Biotech's liabilities along with its assets, Plaintiff's opportunity to collect may be lost. But see Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc., 805 F.2d 351, 355 (10th Cir. 1986) ("If Tri-State cannot collect a money judgment, then failure to enter the preliminary injunction would irreparably harm it.").

4

Critically, Plaintiff is not asking that the transaction be enjoined; only that the proceeds not be distributed immediately. Plaintiff requests that the Court maintain the status quo by directing Defendants not to disburse the sales proceeds until the individual Parties' percentage ownership is addressed by the court and the proceeds can be disbursed in accordance with the Parties' legal rights. This is not a complicated case: the facts are relatively straightforward and the evidence is nearly all documentary. It will be decided by the Court at a bench trial. Directing Defendants not to disburse the sales proceeds until the conclusion of proceedings herein is a prudent course of action given the sudden change in circumstances presented by the mid-litigation acquisition and the irreparable injury to Plaintiff.

## 2. Threatened Injury to Plaintiff Outweighs Injury to Defendants

Second, because of the gravity of the injury to Plaintiff—loss of the full value of his stock—any temporary inconvenience to Defendants is outweighed. Plaintiff is requesting a middle of the road compromise which would merely impact the distribution of the proceeds, not the acquisition itself. Plaintiff does not seek to force a shareholder vote on the acquisition. Plaintiff does not seek to question or unravel the transaction. Plaintiff merely seeks a delay in distribution of the proceeds. See Tri-State, 805 F.2d at 357 ("Balanced against the possible dire consequences to [the petitioner]'s existence, any injury incurred by [the respondents] from mere postponement of the sale is neither exceptional nor uncompensable with a money award.").

## 3. The Injunction on Disbursing the Sales Proceeds is Not Adverse to the Public Interest

Third, this injunction is not adverse to the public interest because it does not impact the public interest. It impacts only the shareholders of Mesa Biotech in a private financial

transaction. Plaintiff requests only that the sales proceeds not be distributed until there is a ruling on the merits in this case.

### 4. Plaintiff has a Substantial Likelihood of Prevailing on the Merits

Finally, there is a substantial likelihood that Plaintiff will succeed in this case on the merits. The elements of breach of fiduciary duty are: "(1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct[.]" Armentano v. Paraco Gas Corp., 935 N.Y.S.2d 304 (S.D.N.Y. 2011). Members of a board of directors of a corporation "owe a fiduciary responsibility to the shareholders in general and to individual shareholders in particular to treat all shareholders fairly and evenly." Id. at 306. "The duty of loyalty both forbids directors to stand on both sides of a transaction and prohibits them from deriving any personal benefit through self-dealing." 1 R. Franklin Balotti & Jesse Finkelstein, The Delaware Law of Corporations and Business Organizations § 4.16, at 2006 WL 2450303 (3d ed. 2021). The duty of loyalty "mandates that a director not consider or represent interests other than the best interests of the corporation and its stockholders in making a business decision." Id.

"[W]hen directors make discretionary awards to themselves, that discretion must be exercised consistent with their fiduciary duties." Applied Energetics, Inc. v. Farley, No. CV 2018-0489-TMR, 2019 WL 334426, at *7 (Del. Ch. Jan. 23, 2019). "In the absence of stockholder approval, . . . the directors must prove that the awards are entirely fair to the corporation." Id. "Such discretionary awards, if challenged, are subject to an entire fairness standard of review." Id. "Under the 'whole fairness' standard of review, the self interested directors [must] prove that the bargain was at least as favorable to the corporation as if the deal

6

had been made with strangers." Jonathan R. Macey, Macey on Corporation Laws, § 16.36[D] at 16-280.  "As the Supreme Court of the United States said with respect to breach of the fiduciary duty of a director and controlling stockholder, '[t]he essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain. If it does not, equity will set it aside.'"  Sorin v. Shahmoon, 152 N.Y.S.2d 521, 523 (Sup. Ct.), aff'd, 153 N.Y.S.2d 562 (1956).  "All stock option plans must be tested against the requirement that . . . the corporation may reasonably expect to receive the contemplated benefit from the grant of the options."  Beard v. Elster, 160 A.2d 731, 737 (Del. 1960).  "[T]here must be a reasonable relationship between the value of the benefits passing to the corporation and the value of the options granted."  Id.

"[D]irectors shall not breach the[ir] obligations . . . (a) by increasing their voice in the control of the corporation through the secret purchase of such stock, or (b) increasing their proportionate share in the surplus in that manner, or (c) obtaining the stock at an inadequate price[.]"  Armentano, 935 N.Y.S.2d at 306.  A minority shareholder has a direct claim for breach of fiduciary duty where a director or controlling shareholder engages in an interested transaction which dilutes his shares and harms his voting power.  See, e.g., Gentile v. Rossette, 906 A.2d 91, 100 (Del. 2006).

Applying the black letter corporate law to the facts of this case, Defendants Cai & Cary breached their fiduciary obligations to Plaintiff.  The fact that the transactions occurred is not disputed, but is represented in black and white on Mesa Biotech's cap table.  See Schedule of Exceptions with Capitalization Table, **attached hereto as Ex. 1.**  It is undisputed that, as founders, Defendants Cai and Cary had already obtained a very generous stock package; there

was no incentivization or retention purpose in the additional 2014 and 2018 grants.  See id.  It is undisputed Cai & Cary gave themselves the 2014 grant without board approval.  It is undisputed the 2018 grants were made without approval of an independent director or an independent shareholder—Cai & Cary were the only ones approving the transactions for Mesa Biotech.  The 2018 grants immediately vested; Cai & Cary did not have to work additional years to obtain the full benefit of the options.  But see Ash v. Brunswick Corp., 405 F. Supp. 234, 241 (D. Del. 1975) (recognizing that a stock plan that requires the recipient of the option to remain in service of the company before the option vests provides consideration to the company).  Because they stood on both sides of the 2014 and 2018 transactions and did not have independent director approval, Cai & Cary must show that the transactions were fair to Mesa Biotech just the same as if they were the result of an arms length bargain.  See Macey, supra, § 16.36[D]; Sorin, 152 N.Y.S.2d at 523.  However, because the company did not receive any consideration whatsoever for giving out the additional options, they cannot do so.  Plaintiff has a substantial likelihood of success on the merits.

WHEREFORE, for all the foregoing reasons, Plaintiff respectfully requests that the Court GRANT his Petition for Preliminary Injunction to prohibit Defendants from distributing the sales proceeds until there is a final order in this case resolving the issue of the named Parties' relative shares of stock ownership.

Respectfully submitted,

LAW OFFICE OF JAMISON BARKLEY, LLC

By: */s/ Jamison Barkley*
316 Garfield St.
Santa Fe, NM 87501
(505) 995-9602
jamison@jamisonbarkley.com
*Attorney for Plaintiff John Elling*

## CERTIFICATE OF SERVICE

I HEREBY certify that I served a true and correct copy of the foregoing Emergency Petition on this 22d day of January, 2021 by use of the Court's efiling system, which caused all Parties entitled to notice to be served.

                                            _s/ Jamison Barkley_____

.