IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN ELLING,

      Plaintiff,

v.                                                                           CV 20-0306 JHR/JFR

HONG CAI, ROBERT BRUCE CARY, a/k/a
R. BRUCE CARY, a/k/a ROBERT CARY,
MESA BIOTECH, INC.,
MESA TECH INTERNATIONAL, INC.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court[1] on Defendants' Motion for Judgment on the Pleadings [Doc. 33], filed July 9, 2020 and fully briefed on August 12, 2020. [Docs. 38, 41]. Also pending is Plaintiff John Elling's Motion for a Preliminary Injunction [Doc. 44], filed January 22, 2021, and fully briefed on February 19, 2021 [Docs. 46, 48] and Defendants' Motion to Stay Discovery Pending Ruling on their Motion. [Doc. 51]. At issue for judgment on the pleadings is whether the result of Elling's earlier lawsuit [*Memorandum Opinion and Order Granting Defendants' Motion for Summary Judgment,* CV 19-0547 LF/SCY ("*Elling I*"), Doc. 61] and the doctrine of res judicata preclude his claims in this lawsuit ("*Elling II*"). For the reasons that follow, the Court agrees with Defendants that Elling's claims are barred because both suits arise out of a common nucleus of operative fact involving Defendants Cai and Cary's alleged mishandling of company affairs from 2010 to the present. After analysis of the elements of res judicata, the Court **grants** Defendants' Motion for Judgment on the Pleadings [Doc. 33] and will enter a separate Judgment dismissing

---

[1] The parties consented to the undersigned United States Magistrate Judge conducting dispositive proceedings in this matter and entering final judgment. [Docs. 9, 18, 19]; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b).

1

Elling's Amended Complaint with prejudice. There being no viable suit, Elling's Motion for a Preliminary Injunction [Doc. 44] and Defendants' Motion to Stay [Doc. 51] are **denied as moot.**

## I.     INTRODUCTION

This is the second lawsuit John Elling has initiated against Defendants Hong Cai and Robert Cary, his former business partners and the majority shareholders of the entity now known as Mesa Biotech, Inc., for alleged breaches of fiduciary duties and shareholder oppression resulting from actions taken by Cai and Cary since the parties agreed Elling would resign from the company's board of directors. [*Compare John Elling's Verified Complaint for Breach of Fiduciary Duty, Shareholder Oppression, and Breach of Contract* (*Elling I*), Doc. 1-1 *with John Elling's First Amended Complaint for Breach of Fiduciary Duty, Aiding and Abeting [sic] Breach of Fiduciary Duty, & Shareholder Oppression,* (*Elling II*), Doc. 3]. In *Elling I*, Plaintiff came to believe that Cai and Cary had been self-dealing by granting themselves additional stock options in 2014 and 2018 allegedly in violation of a 2012 Equity Incentive Plan. [Doc. 3, pp. 3-4]. Elling did not seek to amend his complaint in *Elling I* but instead filed a new case, *Elling II*, and sought dismissal of the first case or its consolidation into the second to accomplish a de facto amendment of his original pleadings notwithstanding the expiration of his deadline to amend in *Elling I*. [*See Memorandum Opinion and Order Denying Plaintiff's Amended Motion for Voluntary Dismissal by Order of Court or, Alternatively, to Consolidate,* CV 19-0547 LF/SCY, Doc. 60].

Elling reasons that he had no duty to amend in *Elling I* because it addressed only his lack of access to information about the company, while *Elling II* presents the "merits" of his claims. [*See generally Plaintiff John Elling's Response in Opposition to Defendant's Motion for Judgment on the Pleadings,* Doc. 38]. The Court in *Elling I* disagreed, finding that once Defendants had completed discovery and moved for summary judgment, to negate that effort by dismissing *Elling*

*I* and forcing them to resume their defense in a new case would be prejudicial. [*See* CV 19-0547 LF/SCY, Doc. 60, p. 5]. The Court in *Elling I* resolved the case when it simultaneously denied dismissal or consolidation and granted summary judgment against Elling. [CV 19-0547 LF/SCY, Docs. 60 & 61].

Defendants now ask that Elling be precluded from prosecuting this case. [*See generally* Docs. 30, 41]. Having compared the pleadings in both cases through the lens of res judicata, the Court concludes that the claims in *Elling II* are precluded because the parties are the same and there was a final judgment on the merits of the claims Elling raised in *Elling I*, which themselves arose from the same operative factual transactions at issue here and which Elling should have known would be precluded under clearly established law. Noting that he became aware of the basis of the new claims before the end of discovery in *Elling I* yet he failed to ask that Court to find good cause to allow him to amend his pleadings, I reject Elling's argument that he was denied a full and fair opportunity to raise and litigate these claims.

## II.     LEGAL STANDARDS

A motion for judgment on the pleadings provides a mechanism by which the court may dispose of a case or a claim as a matter of law. *Lexon Insurance Company v. Cooperative Educational Services*, 2021 WL 1145160, at *1 (D.N.M. Mar. 25, 2021) (citing Fed. R. Civ. P. 12(c)); *Selman v. Delta Airlines*, 2008 WL 6022017, at *7 (D.N.M. Aug. 13, 2008) ("A Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties."). While the Court must generally refer only to the pleadings when analyzing whether a case is subject to dismissal under Rule 12(c), it may take judicial notice of its own files and records, as well as facts that are matters of public record. *Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 n.1 (10th Cir. 2004).

### III.  BACKGROUND

Because the Court resolves this case on res judicata grounds, it describes the allegations in *Elling I*, describes and compares those in *Elling II*, and concludes with application of the law of claim preclusion to the facts as alleged.

#### A.  *Elling I*

Elling filed suit in New Mexico state court on May 7, 2019 against Mesa Biotech, Inc., Mesa Tech International, Inc., Hong Cai, and Robert Cary. [CV 19-0547 LF/SCY, Doc. 1-1]. Elling alleged that he was a founder, initial shareholder, and former director, president and chief executive of Mesa Tech International, Inc. [CV 19-0547 LF/SCY, Doc. 1-1, p. 1]. Cai and Cary were co-founders and initial shareholders as well. [*Id.*]. Elling resigned from the company through an Agreement for Termination of Employment by Mutual Consent and Stock Redemption ("the Agreement"), retaining 3,952 shares of common stock or approximately 8.9% of the company based on the issued and outstanding stock. [*Id.*, pp. 2-3]. He claims that after the Agreement was signed in 2010, he "received scant information about" the company apart from "perfunctory notices of annual meetings[.]" [*Id.*, p. 5].

Elling says that in August 2018 the company notified him that "it had twice amended its certificate of incorporation to increase its total number of shares, amended its bylaws, adopted a new equity incentive plan, increased its numbers of directors, and entered into unspecified indemnification agreements with all of its directors." [Doc. 1-1, p. 5]. The notice also indicated that the company had merged or reorganized into Mesa Biotech, Inc., and relocated to California. [*Id.*]. Elling states that he received no prior notice any proposed merger or amendments and no opportunity to vote or dissent. [*Id.*, pp. 5-6]. He wrote to Defendants in October 2018 and January 2019 "to address his concerns with the purported merger, amendments to the company's articles

of incorporation and bylaws, relocation, and changes to its stock plan[,]" but received no substantive response. [*Id.*, p. 6]. Elling also sought to inspect the company's books and records but was denied access. [*Id.*]. Elling brought three claims: Count I for Breach of Fiduciary Duty, Count II for Shareholder Oppression, and Count III for Breach of Contract and the Covenant of Good Faith and Fair Dealing. [*Id.*, pp. 6-7]. Elling demanded compensatory, punitive, and statutory damages, fees and costs, and pre- and post-judgment interest. [*Id.*, p. 8].

Defendants removed the case to federal court on June 13, 2019, citing diversity jurisdiction. [CV 19-0547 LF/SCY, Doc. 1]. A scheduling order was entered on August 6, 2019, that set deadlines for amendments to pleadings (August 26, 2019), discovery (February 7, 2020), and dispositive motions (March 9, 2020). [CV 19-0547 LF/SCY, Doc. 17]. Elling unsuccessfully attempted to remand the case to state court. [*See* CV 19-0547 LF/SCY, Doc. 30 (Order denying Motion to Remand)]. The parties litigated a confidentiality order, agreed to extend the expert disclosure deadline, and attempted settlement before the assigned referral U.S. Magistrate Judge. [*See* CV 19-0547 LF/SCY, Docs. 25, 32, 36, 41]. Defendants then filed a timely Motion for Summary Judgment on March 9, 2020, asking for dismissal of Elling's claims with prejudice. [CV 19-0547 LF/SCY, Doc. 43]. Elling filed a response on March 25, 2020, and Defendants replied on April 8, 2020. [CV 19-0547 LF/SCY, Doc. 49].

Meanwhile, Elling commenced *Elling II* in this Court on April 3, 2020, amending that complaint as a matter of right on April 7, 2020. [Docs. 1 & 3]. He then moved in *Elling I* to dismiss that case or consolidate both. [CV 19-0547 LF/SCY, Docs. 53, 54]. Presiding Magistrate Judge Laura Fashing ruled on summary judgment as well as dismissal or consolidation on the same day. She denied Elling's motion, reasoning that dismissal or consolidation after discovery expired and a dispositive motion was fully briefed would be unfairly prejudicial to Defendants. [*See generally*

CV 19-0547 LF/SCY, Doc. 60]. She granted Defendants' motion, finding that Elling failed to prove injury from any breach of fiduciary duties. [*See generally* CV 19-0547 LF/SCY, Doc. 61, pp. 8-12]. Judge Fashing entered final judgment accordingly. [CV 19-0547 LF/SCY, Doc. 62; *see* Fed. R. Civ. P. 58]. Elling unsuccessfully sought to set aside the final judgment. [*See* CV 19-0547 LF/SCY, Docs. 66, 69, 70, 71].

### B. *Elling II*

Elling's Amended Complaint in this case alleges that he, Cai, and Cary were founders and initial shareholders of Mesa Tech, International. [*See* Doc. 3, pp. 1-2]. Elling recites his service as a director and the president and chief executive officer for the company. [*Id.*]. As in the first case, Elling states that he and Mesa Tech entered into an agreement for termination of his employment and redemption of his stock on October 11, 2010, leaving him owning 3,952 shares of common stock. [*Id.*, p. 3]. Elling then alleges that on July 31, 2012, Cai and Cary amended the Mesa Tech articles of incorporation to authorize ten million shares of stock and to split each outstanding share into one hundred new shares, Elling then owning 395,200 shares and Cai and Cary each owning 2,000,000 shares. [*Id.*]. In January of 2014, controlling 77.6% of Mesa Tech, Cai and Cary "gave themselves" options for an additional two million shares each. [*Id.*]. Elling alleges that the award of options was not approved by the board, did not benefit Mesa Tech and violated the equity incentive plan that was in place at the time, the stated purpose of which was "for retention of employees and others serving the Company." [*Id.*, p. 4].

Elling goes on to allege that in 2015 Cai and Cary, as the only remaining directors and shareholders[2] and without shareholder notification or vote, merged MTI into Mesa Biotech, Inc.

---

[2] Elling's characterization of Cai and Cary as "the only remaining … shareholders", [Doc. 3, p. 2, para. 6], is inconsistent with his claim of continuing ownership of company stock, [*Compare, e.g.*, Doc. 3, p. 2, para. 8], as well as his claims that thereafter Defendants acted to the detriment of other shareholders including Elling.

6

[Doc. 3, pp. 2, 4]. In March of 2018, under a new equity incentive plan, Cai and Cary "gave themselves" another two million stock options each, which immediately vested. [*Id.*, p. 5]. In April of 2018, Cai and Cary surrendered some of their 2014 options, each retaining 275,865 "shares" which are listed by Mesa Biotech as "uncertificated securities issued in connection with Mesa Tech International's formation in 2009." [*Id.*].

Elling alleges that the 2014 issuance of options to Cai and Cary reduced the cash value and voting power of Elling's stock in MTI. [Doc. 3, pp. 4, 7]. Elling also alleges that the 2015 merger violated statutory requirements of shareholder notice and approval, and that the 2018 adoption of a new equity incentive plan and award of additional options was improper, did not benefit the corporation and was contrary to the plan. [*Id.*, p. 5]. He also says that the official description of the 2014 share options is incorrect. [*Id.*].

Elling denominated three claims in *Elling II*: Count I for breaches of fiduciary duty, Count II for aiding and abetting the same, and Count III for shareholder oppression. [Doc. 3, pp. 6-7]. He again demands compensatory and punitive damages, pre- and post-judgment interest, and costs and attorney fees, plus rescission of the options and cancellation of the shares issued to Cai and Cary. [*Id.*, p. 8].

On May 18, 2020, Defendants moved to stay this case pending the summary judgment ruling in *Elling I*, noting their expectation that a quick bench trial would resolve the case if summary judgment was denied. [*See* Doc. 12, p. 1]. On June 17, 2020, Defendant's filed notice that Magistrate Judge Fashing in *Elling I* granted summary judgment against all claims and dismissed Elling's complaint with prejudice. [Doc. 20]. Consequently, I found moot Defendants' motion for a stay. [Doc. 22]. Defendants moved for judgment on the pleadings on July 9, 2020,

asserting the preclusive effect of *Elling I*. [*See* Docs. 20, 33]. Briefing was complete on August 21, 2020. [Doc. 42].

Elling filed *Plaintiff's Emergency Petition for Preliminary Injunction & Request for Oral Argument* on January 22, 2021. [Doc. 44]. Briefing was complete on February 22, 2021. [Doc. 49]. Defendants also filed a *Motion to Stay* pending the Court's decision on the pleadings, which has not been fully briefed. [Doc. 51].

## IV.   CONTROLLING LAW

"Within the res judicata framework, this court applies federal law to determine the effect of a previous federal judgment, even if that judgment was issued in a case based on diversity jurisdiction." *Hartsel Springs Ranch of Colorado, Inc. v. Bluegreen Corp.*, 296 F.3d 982, 986 (10th Cir. 2002). However, federal law and New Mexico law are consistent on the general standards governing claim preclusion or res judicata. *Potter v. Pierce*, 2015-NMSC-002, ¶ 10, 342 P.3d 54, 57 (citing *Deflon v. Sawyers*, 2006–NMSC–025, ¶ 2, 139 N.M. 637, 137 P.3d 577); *see, e.g.*, *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017). "Res judicata is a judicially created doctrine designed to promote efficiency and finality by giving a litigant only one full and fair opportunity to litigate a claim and by precluding any later claim that could have, and should have, been brought as part of the earlier proceeding." *Potter*, 2015-NMSC-002, ¶ 1; *Lenox*, 847 F.3d at 1239 ("The principle underlying the rule of claim preclusion is that a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not have another chance to do so."); *Pielhau v. State Farm Mut. Auto. Ins. Co.*, 2013-NMCA-112, ¶ 8, 314 P.3d 698, 700 (Res judicata "applies equally to bar all claims arising out of the same transaction, regardless of whether they were raised at the earlier opportunity, as long as they could have been raised."); *Apodaca v. AAA Gas Co.*, 2003-NMCA-085, ¶ 82, 134 N.M. 77, 102, 73 P.3d 215, 240

("[R]es judicata applies not only where a claim was actually litigated in the first action but also where it could have been litigated."). The doctrine "is designed to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, prevent inconsistent decisions, and encourage reliance on adjudication. *Potter*, 2015-NMSC-002, ¶ 10 (quoting *Computer One, Inc. v. Grisham & Lawless, P.A.*, 2008-NMSC-038, ¶ 31, 144 N.M. 424, 188 P.3d 1175 (alterations omitted)).

A party asserting res judicata must establish: (1) there was a final judgment in an earlier action; (2) the earlier judgment was on the merits; (3) the parties in the two suits are the same or in privity; and, (4) the cause of action is the same in both suits. *Potter*, 2015-NMSC-002, ¶ 10 (citing *Kirby v. Guardian Life Ins. Co. of Am.*, 2010-NMSC-014, ¶ 61, 148 N.M. 106, 124, 231 P.3d 87, 105). The first three elements are not in dispute in this case; both suits are brought by Elling against Cai, and Cary and the company, and Magistrate Judge Fashing entered Final Judgment on the merits in *Elling I* on June 17, 2020, later denying Elling's Motion to Set Aside the Judgment on the basis that his claims might be precluded here. [CV 19-0547 LF/SCY, Docs. 62, 71]; *see Pielhau*, 2013-NMCA-112, ¶ 10 ("A dismissal with prejudice is an adjudication on the merits for purposes of res judicata."). Thus, the dispositive question is whether Plaintiff's cause of action is the same in both suits.

"Both the Tenth Circuit and New Mexico have adopted the transactional approach in analyzing the single-cause-of-action element of res judicata." *Potter*, 2015-NMSC-002, ¶ 11 (citing *Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1335-36 (10th Cir. 1988); *Three Rivers Land Co. v. Maddoux*, 1982-NMSC-111, ¶ 27, 98 N.M. 690, 652 P.2d 240, overruled on other grounds by *Universal Life Church v. Coxon*, 1986-NMSC-086, ¶ 9, 105 N.M. 57, 728 P.2d 467). Under the transactional approach, all issues arising out of a "common nucleus

9

of operative facts" - or the same transaction or series of transactions - are part of the same cause of action. *Potter*, 2015-NMSC-002, ¶ 11 (citation omitted); *Hatch v. Boulder Town Council*, 471 F.3d 1142, 1151 (10th Cir. 2006). The Court's focus is on the underlying facts rather than the legal theories relied on in the first action. *Pielhau*, 2013-NMCA-112, ¶ 14. "The facts comprising the common nucleus should be identified pragmatically, considering (1) how they are related in time, space, or origin, (2) whether, taken together, they form a convenient trial unit, and (3) whether their 'treatment as a single unit conforms to the parties' expectations or business understanding or usage.'" *Id.*

Finally, "[e]ven if two actions are the same under the transactional test and all other elements are met, res judicata does not bar a subsequent action unless the plaintiff could and should have brought the claim in the former proceeding." *Potter*, 2015-NMSC-002, ¶ 15 (citation omitted). Thus, the party must have a "full and fair" opportunity to litigate the claims under consideration in the prior proceeding. *Id.* Under certain circumstances, the filing of a new claim arising from the same transaction at issue in a prior action may be allowed because the plaintiff did not know the full dimensions of the claim at the time of the first action, "[b]ut claim preclusion applies to all claims arising from the same underlying transaction even where the new claims are based on newly discovered evidence, unless the evidence was either fraudulently concealed or it could not have been discovered with due diligence.'" *Lenox*, 847 F.3d at 1244. Denial of leave to amend or add claims to a first lawsuit, for example where the motion to amend is untimely, does not negate an otherwise valid defense of res judicata. *Apodaca*, 2003-NMCA-085, ¶ 83.

**V.     ISSUES PRESENTED**

Do Elling's claims in *Elling II* - that Defendants breached their fiduciary duties and diluted his stock by self-dealing in 2014 and 2018 - arise out of a common nucleus of operative fact with

those raised in *Elling I* - that Defendants breached their duties to notify Elling and solicit his vote in connection with management decisions from 2010 to the present - thus establishing the fourth element of res judicata?

Even if so, should the Court find a lack of full and fair opportunity to litigate and thus deny claim preclusion because Elling learned of Defendants' self-dealing after the deadline to amend his *Elling I* complaint without court approval had passed or, on the other hand, is Elling precluded from litigating *Elling II* because he ignored his opportunity to show good cause and obtain leave of court to amend the *Elling I* complaint and instead filed *Elling II,* and then failed to persuade the *Elling I* judge to dismiss or to consolidate with *Elling II*?

## VI.  ANALYSIS

As noted, because the first three elements of res judicata are not reasonably disputed, the Court's focus is on whether Elling's claims in *Elling I* are based on the same transaction or series of transactions as those here in *Elling II*. Having considered the two operative complaints, the Court finds that the same transactions or series of transactions were involved in both suits and so concludes that res judicata must be applied to bar this suit. Moreover, Elling had a full and fair opportunity to amend his claims in *Elling I* after he learned the details of Cai and Cary's alleged self-dealing. His failure to do so, or to appeal Magistrate Judge Fashing's denial of dismissal or consolidation, were consciously made decisions which leave him no relief here.

The claims in *Elling I* and *Elling II* are related in time, space, and origin, all relating to Cai and Cary's purported breach of fiduciary duties to Elling, involving the same time period, and arising from the same core actions (or failures to act) after Elling resigned. *See Pielhau*, 2013-NMCA-112, ¶ 15 ("The two suits address the same conduct by the same insurance agent, and all of the relevant conduct occurred within the same time period."). By failing to keep Elling apprised

of company business, as alleged in *Elling I*, Cai and Cary were able to self-deal, as alleged here. While the conduct is technically distinct, it is very closely related to the actions Elling admits he was aware of – the merger, amendments, and adoption of a new incentive plan. As the Tenth Circuit recently indicated, identification of additional instances of, or injuries from, the same course of conduct as is at issue in the first suit will not save a second. *See, e.g.*, *Goodwin v. Hatch*, 781 F. App'x 754, 761 (10th Cir. 2019) (unpublished).

If brought together, the claims would have formed a convenient unit for trial. "In considering whether the facts form a convenient unit for trial, [the Court] examine[s] overlap of the witnesses and evidence relevant to the claims in the two lawsuits." *Pielhau*, 2013-NMCA-112, ¶ 17 (quoting *Anaya v. City of Albuquerque*, 1996-NMCA-092, ¶ 14, 122 N.M. 326, 924 P.2d 735). The witnesses and evidence adduced during discovery in *Elling I* are those necessary to prosecute *Elling II* and the issues raised in both cases would have required little more than a short bench trial for their resolution. It was reasonable for Defendants to expect that conclusion of *Elling I* would preclude later claims on substantially overlapping facts and theories.

Finally, Elling had a full and fair opportunity to litigate his current claims in *Elling I*. Elling's strongest argument is that because his deadline to amend without court approval in *Elling I* had passed, unless he had a duty to move to amend, res judicata cannot apply to bar facts he discovered after filing his first case. The Court is convinced this simply is not the law. Where a party fails to take advantage of an opportunity to litigate a claim based on the same set of facts the claim will be barred. *Apodaca*, 2003-NMCA-085, ¶ 82. Elling's assertion that he could not have added his current claims to *Elling I* ignores the very low standard for establishing good cause to amend (recognized by Magistrate Judge Fashing when she denied relief from judgment - *see* CV 19-0547 LF/SCY, Doc. 71, p. 7), as well as the fact that he *did* seek to add his current claims to

*Elling I* by filing this case and moving to consolidate the two cases, relief that was denied because of the prejudice it would cause Defendants. [*See* CV 19-0547 LF/SCY, Doc. 60]. Elling then abandoned his opportunity to litigate all of his claim in *Elling I* by failing to appeal Magistrate Judge Fashing's ruling. *Apodaca*, 2003-NMCA-085, ¶ 82 ("The proper recourse for a plaintiff is to appeal the denial … and/or request the court to expressly reserve the plaintiff's right to maintain a second action.")  By opting to file a new case against the same set of defendants, though Elling did not take the obvious path of showing good cause to amend his original pleadings, he sought the same benefit without the burden of good cause. The open door of the courthouse is not an invitation to abandon clearly established rules of procedure.

Elling cannot claim that Defendants wrongfully concealed the "new" information giving rise to his second lawsuit because he obtained it during discovery in *Elling I*. *See Lenox*, 847 F.3d at 1244 ("Lenox cannot seriously maintain that Defendants' involvement could not have been discovered with due diligence because Lenox did, in fact, discover it."). Nor can he argue that "to have had a fair opportunity to litigate, [he] must have known of these facts at the time [he] filed its original complaint." *Id.*

> [B]roadly speaking, claim preclusion does not bar subsequent litigation of new claims based on facts the plaintiff did not and could not know when it filed its complaint…. Critically, though, if the plaintiff discovers facts during the litigation that stem from the same underlying transaction, it must supplement its complaint with any new theories those facts support…. A subsequent lawsuit will be allowed only if the facts discovered mid-litigation give rise to new and independent claims, not part of the previous transaction…. Put differently, a plaintiff cannot avoid supplementing his complaint with facts that are part of the same transaction asserted in the complaint, in the hope of bringing a new action arising out of the same transaction on some later occasion.

*Id.* at 1244-1245 (internal alterations and citations omitted; brackets supplied). Thus, the rule Elling would apply recognizes only genuinely new claims discovered after litigation began. *See Hatch,* 471 F.3d at 1150 ("Although a plaintiff may seek leave to file a supplemental pleading to

assert a new claim based on actionable conduct which the defendant engaged in after a lawsuit is commenced, he is not required to do so…. This does not mean, however, that a plaintiff can avoid supplementing his complaint with facts that are part of the same transaction asserted in the complaint, in the hope of bringing a new action arising out of the same transaction on some later occasion."). Because the conduct complained of occurred in 2014 and 2018, and Elling was made aware of it in 2019, he cannot now reasonably claim that he was entitled to bring a new action based on the same series of transactions.

### VII.  CONCLUSION & ORDER

Wherefore, because Defendants have established that they are entitled to judgment on the pleadings on the grounds of res judicata, it is therefore **ordered** that Defendants' Motion seeking the same [Doc. 33] is **granted** and Elling's claims are **dismissed with prejudice**.  Elling's Motion for a Preliminary Injunction [Doc. 44] and Defendants' Motion to Stay [Doc. 51] are **denied as moot**. A Final Judgment will be entered concurrently.

SO ORDERED.

_____
JERRY H. RITTTER
U.S. MAGISTRATE JUDGE
*Presiding by Consent*